The first case on the calendar is United States v. Robert Cavigliano, and we're ready to proceed. Something tells me I did not pronounce that name correctly. I think it's Cavigliano, Your Honor. Cavigliano. Thank you. My name is Matt Brissenden, and I represent Mr. Cavigliano. The government has taken the position throughout these proceedings that a non-party's invocation of the Fifth Amendment has no evidentiary value and may never be considered by a jury. And yet we know that in the context of civil litigation, such an invocation is both admissible and may be probative and may be considered by the jury in order to draw inferences. And so I think one of the conundrums that's at the heart of this case is how is it possible that evidence that is probative and admissible in the civil context is considered to be irrelevant and to have no evidentiary value in the criminal context when the same rule of relevance applies in both contexts? Was that argument made to the district judge, the analogy between the civil cases and the criminal cases? No. I don't think that specific argument was made. This analogy that I'm currently making, counsel clearly did seek to call the witness to testify and to invoke the Fifth in the presence of the jury. But the analogy that I'm presenting, I don't think that argument was presented by trial counsel. Didn't the lawyer, in fact, say we're not going to argue that he's guilty and you can give an instruction, Judge, and he can draw no inference? Isn't that exactly the opposite of what you're arguing now? You're correct, Your Honor. I think that did happen on the record, although it sort of happened in two steps. I think first what happened is counsel sought to have the witness invoke, and when the judge said there's no way that's going to happen, I think as a fallback position, then counsel suggested, well, maybe the government should come up with an instruction, et cetera. I also want to point out, however, though, that the government has never advanced a preservation argument in this appeal. And I think under this Court's established authority, the government waives any waiver argument by not pressing that argument on appeal. So I think, number one, I do believe it was adequately preserved. And number two, I don't think that argument was raised by the government, Your Honor. But when you talk about probative value, I mean, it's well settled that someone who's actually innocent has the right to assert the Fifth Amendment, correct? Absolutely, Your Honor. So what probative value was it? Well, Your Honor, there's two steps to this. Number one, we know in civil cases clearly that a jury is allowed to draw an inference, right? So, you know, there obviously should have been a 403 balancing test here, and the judge is allowed to consider all these things. But to say as a per se matter that there's no evidentiary value and that the jury can never hear this type of testimony is where I think the error came in. I'm not saying that this type of testimony always has to come in. I understand that there are risks. But the judge relied on a decision of this Court, Deutsch, in making that determination, correct? Absolutely. And I think, you know, Deutsch is an interesting decision because it says a number of things, some of which I think are self-contradictory. In my own view, I think it's a case that sort of begs for clarification. On the one hand, you're absolutely correct. Deutsch says at some point that the jury shouldn't consider the invocation to have evidentiary value. But then right below that, it says the district court has to conduct a 403 balancing test, which in my mind is sort of a strange thing to say. If there's no evidentiary value, why do you need to conduct a 403 balancing test? And then even further down in the paragraph, there's this line, and I want to quote it. It says, So now suddenly the Court is saying, well, when it's the defense attorney seeking to introduce this type of evidence, it may be okay under some circumstances to draw an adverse inference. Well, in that case, it was the defense attorney who was seeking to offer the evidence, correct? Absolutely. Absolutely.  That is true. So you argue that the district judge didn't do a 403 analysis, but by relying on Deutsch, it was the same facts. Why isn't that, in effect, a 403 analysis? You know, the government cites a number of cases that basically say from this circuit that when the record is silent, this Court can assume that the lower court conducted that 403 balancing, essentially giving the lower court the benefit of the doubt. The problem is the record is not silent in this case. From the very first moment that this issue even came up, the judge said there's no way that's happening. It's clearly adopting what was a per se stance. Before we even heard what the testimony was, what the witness was, what the significance was. But he did hear the testimony outside the presence of the jury, correct? He did, to ensure that the ---- And Deutsch was part of the argument before the jury. Deutsch was part of the argument. That is correct, Your Honor. I mean, I also am having difficulty seeing how there wasn't a, what amounts to a 403 balance here, even if it wasn't explicitly referenced. And I also would like to ask if you could address, whatever we may think about that question, why on this record it wouldn't have been well within a district court's discretion doing that balance to decide to exclude the assertion of the privilege. I think, you know, there are circumstances where, and I think one of the main concerns that a court is likely to have under these circumstances is that a defendant is essentially gaming the system, right? That you're calling this witness inclusion to somehow get the jury to draw this inference. But if you look at the record, I think it was very clear that there's an adversarial relationship between Mr. Cavigliano and Mr. Royds. And when his attorney is seeking to cross-examine him, Mr. Royds is almost contemptuous to the attorney. So I don't think there was any indication in the record that Mr. Royds was in any way working with Mr. Cavigliano or that there was any type of collusion. So the other question on page 190 of the record, the defense counsel, and I'm not talking about waiver, but he does make the statement, I'm not going to even argue that he's guilty, that Mr. Royds is guilty of any crimes. I want to let the jury speculate about what it will. Isn't that a problem for you? As a substantive matter, not a waiver matter. It's hard to reconcile that with the rest of the defense, which clearly, I mean, if you look at the opening statement, the idea was to implicate Royds. I do see that I'm running short of time, and I want to make sure that I address sort of the second half of this equation, because there's this second ruling that the Court makes after excluding the invocation of the Fifth. It says also we're not going to allow you to call your own defense investigator to testify about Mr. Royds' out-of-court statements. And here you just have this incredible, inherent, and I would suggest irreconcilable conflict between the two decisions, because on the one hand, the Court is saying, you know, Mr. Royds has the right to invoke his Fifth Amendment with respect to questions, is he in the house? Is he using the computer? Does he have the passwords? Is he using child pornography? And then when he answers those same questions, in an incriminating fashion to the defense counsel, the Court finds that that is somehow not contrary to his penal interests. And I don't know how you reconcile those decisions. Well, there's context. When you look at the question of penal interests, you have to consider the context, right? Absolutely, Your Honor. And the investigator went to see him prior to the trial, correct? That's correct. And you don't know very much about that, other than that he asked him these questions. Has any – I'm not sure if this is in the record, but I think in your reply brief there's some statement about he told him he was looking into claims that Cavigliano was guilty, not that Royds had anything to do with it, correct? I think that is correct. But what is so telling about this exchange is he asked this series of questions. Were you in the house? Yes, he was in the house. Was he using the computer? Yes, he admits he's using the computer. Yes, he has the passwords. All these things essentially put him at the scene of the crime. And the last question, Mr. Royds, were you accessing child pornography? Mr. Royds says, you know what, I'm invoking my Fifth Amendment. It goes to Mr. Royds' own guilty conscience and his clear comprehension himself that these questions are implicating him. He clearly understood that these questions were contrary to his claim. But why isn't the difference between the Fifth Amendment protection and the issues relating to statements against penal interests, the difference between a concern about an inculpatory, directly inculpatory statement protected by or within the purview of the statement against interest exception on the one hand and a statement that might lead to cross-examination or might lead the government to information that might then indirectly inculpate someone, why isn't that an adequate difference to explain what happened here? I understand and I agree, Your Honor, that the standards are not going to be perfectly and exactly correct. They're not coterminous. You're absolutely correct, Your Honor. However, if you look at Williamson and what the Supreme Court says is you have to look at the statements in context. And it gives this example of saying where a defendant admits Sam and I went to Joe's house, right? And the Supreme Court says, well, if that suggests that he was involved in this conspiracy, if that can be used to establish that evidence, then that is contrary to his penal interests. What the Supreme Court says, even statements that are on-their-face neutral may actually be against the declarant's interests. And I would submit that's precisely the situation here, and Mr. Royds understood that. I cited to this, I thought it was an interesting Tenth Circuit case, that says when you have evidence of the subjective belief of the witness that a statement is against his penal interests, that ought to be controlling, because really that's the purpose of the rule, is would this person have made this statement but for the fact that it was true. And so we need to explain just what it is about the context that you say supports the trustworthiness of the statements here, because I understand your argument, but if I'm understanding it correctly, you're saying the answer to the final question, where I'm not going to answer that question, tells us that his answers to the prior questions were he knew what he was doing and he knew that this was not in his penal interests. But couldn't you argue with it the reverse? He didn't know. He answered those questions. But when he's asked the final question, he says, I'm not going to answer that question because he suddenly realizes it might be inculpatory. Well, I mean, if he realizes that final question is inculpatory, then certainly the questions leading up to that, right, which place him at the scene and give him the ability to access that child pornography, are inculpatory as well. But this is at a point in time before he knows anyone's accusing him of being the guy who did it, correct? Well — The trial, by the time he got to trial, he presumably knew that Mr. Cavigliano's defense was going to be that it was Reuts, not him. At this point in time, he doesn't have a reason to know that, or you haven't shown that, and it's — you're the advocate of this rule, so you have the burden of showing it, correct? Well, he certainly knows at this point that an investigator from — Mr. Cavigliano is on trial for accessing this material, and an investigator representing Mr. Cavigliano has now showed up at his house to ask him questions about whether he himself was using the computer. So it's hard to — from either a reasonable person standard or the subjective standard of — of Mr. Reuts, it's hard to conceive of how he did not understand that these were inculpatory. And his own actions, I would submit, indicate that he did very clearly understand that these statements were contrary to his penal interests. You've reserved some time. We'll hear from your adversary. Thank you very much. May it please the Court, Joseph Karaschewski appearing on behalf of the United States. There's no basis — the — Mr. Cavigliano has not set forth a basis upon which this Court could find that the district court abused its discretion, either with regard to the way it handled the invocation of the Fifth Amendment by Mr. Reuts or the evidentiary issue under Rule 804 of the Federal Rules of Evidence. First of all, with regard to the Fifth Amendment, what the district court did in this case to make a determination as to whether or not Mr. Reuts would be allowed to invoke the Fifth Amendment before the jury was precisely what happened in this Court's decision in Deutsch. You would agree, would you not, that it would have been better, at the very least, if the district court had explicitly undertaken a 403 analysis? Yes, Your Honor. It would have been better if it had been explicit. However, all the arguments were made to the district court, and this Court has observed on many occasions that when arguments are made, specific arguments are made to the district court, and the district court rules on them, the inference or the presumption is that the district court considered those arguments and ruled, and its ruling indicates which way it went on those arguments. So your point is that the government stated, by reference to Deutsch, that he had to undertake a 403 analysis? Yes, Your Honor. In essence, that that was part of what the court had to do in making a determination as to whether or not Mr. Reuts would be able to invoke, should invoke the Fifth Amendment before the jury. And … Is it your view that it has no probative value, the assertion of the Fifth? It has very little probative value. And certainly that's one thing, and my opponent tries to drive that home in terms of, well, what else could the jury have inferred based upon the invocation of the Fifth Amendment by Mr. Reuts? However, that … there's prejudice … in someone invoking the Fifth Amendment before a jury, there's built-in prejudice in that, and I think the Court has recognized that, certainly in Deutsch. Number one, no one can cross-examine him about what he means by that. And you can invoke the Fifth Amendment for … because it … you don't want to be a witness against yourself. And in this case, Mr. Reuts may have invoked the Fifth Amendment because he was trying to protect Mr. Cavigliano. Why should the rule be different if you think it is different in criminal and civil cases? I mean, there's more to lose for a defendant in a criminal case who wants to call a witness and have an adverse inference drawn. Why is the rule different? Well, I think as the Court … and I haven't looked at all those civil cases, but I think as the Court has … or as Your Honor has … has observed, it all depends on the context. It depends on the context, and you have to make that determination. So across the board here, to say, oh, you know, that this should have been allowed that the judge abused his discretion by not allowing this to come in, that doesn't put it in the proper context. And indeed, my opponent argues, well, geez, of course the jury … what else was the jury going to do when he's arguing that this mistake was not harmless? He said, well, of course it would have affected the verdict, because what else would the jury have decided with regard to the invocation of the Fifth Amendment? The conclusion is almost inescapable, that it was Royds who was doing this and not Cavigliano. First, I disagree that that necessarily means that, since more than one person can be accessing a …  It's purely speculative in any event. Purely speculative. But you have the situation where just that Fifth Amendment just sitting there is … is without the ability to cross-examine it … cross-examine about it, and the dramatic implications of it, you've got someone in, you know, the jury kind of nudging each other and saying, oh, we all know what that means, we all know what invoking the Fifth means, and it's something that … that counsel says in … in his … in his brief. So … so you must agree, I think, that once this situation arises, if the invocation of the Fifth Amendment has probative value, more or less, depending on the context, that there may be situations where, as a matter of 403, it's appropriate for a district court judge to allow a witness, a non-party witness, to invoke the Fifth Amendment privilege before the jury. You must agree with that. I … I … it depends on the context, Judge. So you do agree, so that there are some contexts where that might be appropriate. There … there might be some context in which that is appropriate, yes, Your Honor. Not this one. Not this one. And … and I mean, in terms of the judge conducted … did not abuse his discretion and make a determination that this just wasn't going to happen, that this was not going to happen, that this … that this … this witness was not going to get in front of the jury and invoke the Fifth Amendment, given the context of this case and given all the unspoken things that come with it. What I'm taking by is the statement by defense counsel that I'm not going to even argue that this person is guilty, and I'll let the jury speculate. And I'm also … maybe you can address this a little bit, taken by setting aside this particular evidentiary issue, the overwhelming, or what appears to me to be overwhelming, nature of the evidence against Mr. Kavigliano. Yes, Your Honor. And that's … that would be my last point, or the last point that the government set forth in its brief, that the evidence against Mr. Kavigliano was overwhelming, so that even if … even if this was an error, or even if this Court finds that there was some error in what the judge did in determining that Mr. Royds could not testify before the jury about his invocation, that there was overwhelming evidence. But in addition to that, you also have the situation that it's being set forth, and I think there's a bit of … the issue has become a little bit narrower on this appeal and said, oh, our defense all the time was that it was Royds, it was Royds, it was Royds.  And it also said it could have been a number of people. It could have been a whole bunch of different people. It could have been his father who lived there. It could have been the other gentleman, Morozzi, Rich Morozzi, and kept referring him as the big guy with the tattoos. It could have been him. It could have been Royds. And this evidence about Royds being there, having access, that was testified to by other individuals. So … Is there any evidence that, in the record, that Mr. Royds was in the house on the specific days, October 31st, November 1st, and so on? No, I don't believe there was that specific evidence with regard to those specific dates that are alleged in the indictment. There was evidence that he had access to the house, but from the defendant's perspective, it would have been extremely helpful to have an admission from the witness himself that he had access to the house and to the bedroom. So could you address the argument that, having ruled on the Fifth Amendment privilege, the district court abused its discretion in excluding the out-of-court statements? Well, as the Court has already observed, the standard is not the same on the Fifth Amendment issue and on the 403b3 issue. The Fifth Amendment issue was — the Fifth Amendment was that an individual can't be compelled to be a witness against himself. In terms of 403b3, it had to have so great a tendency to expose a declarant to criminal liability that it was — that it wouldn't be true — he wouldn't say it if it wasn't true. So there is that different standard. There is that different — the different standard. And again, here, the district court did not abuse its discretion in making a determination that these statements, and it goes through the statements that we have these set forth in our brief. The record is very small writing, and as you see, I have to put these readers on to see it. But the specific statements, have you ever — the statements that Mr. — that the investigator asked him, at any rate, went to, as you know, did you have access to the house, did you have access to the wireless, did you have a password to the wireless connection, and then, of course, the question, did you access child pornography, said, oh, hold everything, I'm not answering that question. But as the Court has observed, you know, there — again, in the context of it, you've got a situation where asking all these questions about, you know, Bob Cavigliano, sure I do. Have you been to his house? Yeah, I was at his house. Did you have access to the wireless? There could have been a lot of reasons why they had access. They could have been watching Netflix with the wireless. And then when, hey, did you download child pornography? Then it's like, whoa, I'm not answering that question. This will expose me to criminal liability. So there — and I think that's the analysis that the Court — that the Court conducted, and there was no abuse of discretion in the manner in which it did it. Have we not said in the context of 804b3 that — and this is maybe just us, it certainly surprised me — that all you need to show is that the statement is probative? There's a quirk in our jurisprudence in the Second Circuit, it seems to me, that unlike any other circuit, we have said or suggested that all you really need to show is that a statement is probative in a criminal trial against — as to the declarant. There may be a quirk, Judge, that's — So you agree with me? I — I understand what you're saying, Judge, which appears to be a little bit inconsistent with the language of the rule, saying that he has to have no greater tendency to expose the declarant to criminal liability. But if I were to read the plain language of the rule, I'd conclude one thing, but then I look at our case law and I see that we said something materially different. Far be it for me to call the Court quirky, but I think it — yes, Your Honor. Well, I'm saying quirky, you don't have to say quirky. But I agree with that observation that that determination that it has to be probative, or that it only has to be probative, does seem to be in tension with the language of the rule. And so do we have — look, if we get to this issue of error, as opposed to the harmlessness analysis, do we have to determine that there was no probative value to this — to the possible statements to Mr. — to Mr. Boards' statements? That, of course, was not what the district court — that was not the analysis that the district court undertook. But it didn't have any probative value. Correct. Right. The district court said that it had — it didn't have so great a tendency to expose Mr. Royce to criminal liability. I think, Judge, if you were to say — I think the easier way to make that determination certainly is even if there was an error, it was harmless. I think for — the Court has made that observation that there really was the defendant's guilt here. And I think the easiest way to deal with that in this context, without saying, okay, we have to reconsider our jurisprudence, is that if there was an error, it was harmless. Thank you. I just wanted to briefly address the harmless error point because I didn't speak to it before. This wasn't, as the government suggests, an afterthought or one of many defenses that Mr. Cavigliano went to trial on. It was his defense when he went to trial. If you look at the first line of defense counsel's opening statement, he told the jury — it was Stephen Royce — he told the jury, we are going to prove to you that Mr. Royce not only had access to the house, that part came in, but that he used the computers and they had access to the wireless. And, of course, the Court's rulings prohibited the jury from ever hearing that evidence, even though it existed. And so, you know, the government points to the closing statement. Of course, at this point, the defense has been gutted. Of course, at this point, he can't fall back on the Royce defense anymore. So out of necessity at this point, I think defense counsel is almost looking for something to say, because the defense that he walked into the courtroom with was taken away from him. This was not a harmless error. The defense was deprived of his Sixth Amendment right to present a defense. It was a real defense. It was a plausible and valid defense. And I'd like to point out that when you look at the specific counsel, the government's main argument here was that there was evidence recovered showing Skype chats under the name of Bob Kavig that closely matched up some of the chats which the government agents had with Snowy23. But if you look at the specific counts, if you look at the specific distribution counts, I think there's five distribution counts, on four of the days that the agents hooked up with the Snowy23 and received evidence, there were no chats going on whatsoever. And so there's no evidence identifying evidence on those days who was behind the computer. Now the government, in at least their supplemental brief, seems to say, well, maybe Royds was using the computer, too, for these purposes, but that doesn't mean that Mr. Kavigliano is not guilty. It is important. It is relevant, especially to those distribution counts. And I would also add, and this didn't come up during our argument, but to the extent that the government is suggesting that Mr. Kavigliano and Mr. Royds perhaps, or that Mr. Kavigliano could be guilty on an aiding and abetting charge or something of that nature. No, no, I think, so as I understand the facts, when the officers armed with a warrant, unbeknownst to Mr. Kavigliano, ask him if there's a laptop or wireless at the home, he denies both of those things. A wireless network is found inside the home, he tries to distract them, and this is the story, right, that the government had, by going up to the attic, but then they find the wireless network in his home, they find the laptop on his bed, there's a password that's associated, not so far as I can recall, with Mr. Royds' birthday, but Mr. Kavigliano's birthday, 3658, right? And on and on and on and on, and it would take a genius, that is Mr. Royds being a genius, to come up with all this, all these facts, all these small details, to impersonate Mr. Kavigliano. I think that that was the thrust of the argument, in addition to the current argument that two people could have done this, the fact that Mr. Royds also viewed child pornography on this laptop didn't preclude the fact of Mr. Kavigliano's guilt for the same conduct. Just very briefly, I think Your Honor's recitation of the facts is mostly correct, although I think Mr. Kavigliano conceded there was a wireless network, if that's relevant. He did, you're correct, Your Honor, did deny the presence of a wireless network. Maybe it was a nonworking wireless network. In any event, I'm not sure those details are determinative. I think the point I was trying to make is that if the jury had had access to this information regarding Royds, there's basically three conclusions they could have reached. They could have reached the conclusion, the main defense that was being put forward was that Royds did all of this and set up Mr. Kavigliano. And I understand Your Honor is suggesting that is an unlikely conclusion to have reached. But there could have been a second conclusion. Roberts. I mean, I'm open-minded. Thank you, Your Honor. There could have been a second conclusion which the jury reached, and that is, maybe at some points it was Mr. Kavigliano using this computer, and at some points it was Mr. Royds using that computer. And even that determination would have been relevant to presenting a defense in this case. And that's a very real possibility. And Mr. Kavigliano was denied the ability to present that evidence and make that argument. That's the point I was trying to make. Thank you. Thank you both. I will take the matter.